## B. F. AMMONETTE, *v.* J. L. CRANDELL, Sheriff.

A Sheriff is not liable for the amount of the writ of execution in his hands, who refuses to seize negroes the title to whom is in another, in a form recognized as valid by law, where it does not appear that he had reason to believe that the title was simulated.

Titles which the law has required to be in writing, and which when recorded are notice to all the world, are of sufficient dignity to justify the Sheriff in refusing to treat them as nullities, in the absence of sufficient circumstances to indicate to him their simulation; possession by the debtor in execution, in itself, is not a sufficient circumstance.

APPEAL from the District Court of the parish of Madison, *Perkins, J.*

*Stockton & Steele,* for plaintiff and appellant, cited Act 7th, April 1826, p. 17; 2 An. 408, 411; 8 An. 77.

*Stacy & Sparrow,* for defendant:

If property belongs to the defendant in execution, and the Sheriff, knowing this, fails or refuses to seize it, he is liable to the plaintiff for all damages that he may suffer from such refusal or neglect. 5 Louisiana Reports, p. 344, *Bottom* v. *Breed.*

Second. That the Sheriff cannot be protected by an indemnifying bond given by the plaintiff, for making an illegal seizure, that the contract under which, in consequence of the bond given, the Sheriff should make such seizure would be illegal, and that the latter could maintain no action against him upon it. *Ex turpi causâ non oritor actio.* 8 Rob. Rep. pp. 112 and 115; 4 An. Rep., p. 201.

Third. That if a Sheriff seizes the property of a third person, to satisfy a judgment against the defendant, he commits a trespass and is liable for all damages suffered even when he has acted in good faith, and that he is not protected by proving that he has acted according to the best of his knowledge, when he has seized the property of another. But that he is bound actually to know that the property seized belongs to the debtor. 2 N. S., 24, *Deliah* v. *Morgan.* 5 N. S., 500, *Curraley* v. *Morgan.* 6 N. S., 581, *Peet* v. *Morgan.* 5 L. R., 39, *Crocker* v. *De Passan.* 1 R. R., 76, *Barney* v. *DeRussey.* 4 Rob. Rep., 39, *Duperru* v. *Van Wickle.*

OGDEN, J. *Silas Lillard,* in 1840, obtained a judgment against *David Stansburgh,* for $4057 09, with eight per cent interest from the 3d of July, 1837.

This judgment was transferred to *Robert Slaughter*, and the plaintiff, as curator of *Slaughter's* succession, instituted the present suit to recover the amount of the judgment from the Sheriff of Madison and his official sureties, on the ground of misfeasance and neglect of duty on the part of the Sheriff in relation to the execution of two writs of *fieri facias* which had been issued on the judgment.

AMMONETTE
*v.*
CRANDELL.

The acts of misfeasance charged are :

First. That the Sheriff made a false return of an execution issued in July 1852, stating that no property belonging to the defendant could be found.

Second. That he failed to execute an alias writ of *fi. fa.* which was issued in September following, notwithstanding the plaintiff had pointed out to him and directed the seizure of certain slaves and cotton, in the possession of the debtor in the execution of sufficient value to satisfy the judgment.

The Sheriff has set up a special defence, alleging that from the titles to the property as recorded, and from facts of general notoriety, he had every reason to believe the property pointed out to him for seizure belonged to *Jesse Stansburgh*, and that he would have committed a trespass by seizing it as the property of the judgment debtor.

The first point made for the appellant, who is the plaintiff in the cause, is that the Sheriff is liable under the Act of the Legislature of 1826. The duties imposed on the Sheriff by the 17th section of that Act, in default of which, he becomes liable for the amount of the writ placed in his hands, are that he shall return the writ on or before the return day mentioned in the writ, and that he shall pay over the moneys received thereon to the party entitled to it. The Sheriff is not charged with any such breach of official duty in this case, and the Statute is not applicable. The misfeasance with which the Sheriff is charged, is that of having made a false return and having refused to seize the property which had been pointed out to him as belonging to the debtor. The return is not shown to be false. The Sheriff has assigned his reasons for not seizing the property, and if the plaintiff has established satisfactorily that the property did belong to the debtor in the execution, the Sheriff is responsible in damages unless the reasons assigned for not seizing it furnish a legal justification. The property he was required to seize consisted of thirteen slaves and a crop of cotton. The title to slaves is required to be in writing. The plaintiff has not produced any written evidence of title to the slaves in *David Stansburgh*. The defendant has shown that the titles as of record, stand in the name of *Jesse Stansburgh*, and that all of them except three were derived by a Notarial act of sale, made in 1837, from *David* to his brother *Jesse Stansburgh*. It is contended however, that the titles made to *Jesse Stansburgh*, are mere simulations, and we are asked to consider the case as if in the language of the brief of the plaintiff's counsel, these matters had been regularly brought up by formal issues between the real parties,. *Jesse Stansburgh* claiming the property as his own on the one side; and on the other the plaintiff claiming that it belongs to *David Stansburgh*, and that it is therefore subject to his execution. This we are not permitted to do, *Jesse Stansburgh* is not a party to the suit, he was not cited and has not voluntarily appeared in the cause, nor does the petition ask for a judgment against him. As the only titles to the negroes exist in the name of *Jesse Stansburgh*. and those titles are made in a form recognized as valid by law, and under the circumstances, it does not appear the Sheriff had reason to believe they were simulations, the justification to the Sheriff for not seizing them is complete.

AMMONETTE
*v.*
CRANDELL.

An examination of the evidence and a deliberation on the argument presented as to the question of simulation, would lead to no practical result, because, if our conclusion should be that the titles of *Jesse Stansburgh* were simulated, and could render no judgment against him as he is not a party to the suit, and it is immaterial to the defence set up by the Sheriff whether those titles are held to be real or ficticious. The plaintiff's counsel contends that it was the duty of the Sheriff to have seized the property without regard to the paper titles or record, because the defendant was in open and notorious possession of the property, and he cites the case of *Bennett, Tutrix,* v. *Stains,* Sheriff, 8th An., to sustain him in that position. We do not understand that decision as sanctioning such a doctrine. Titles which the law has required to be in writing, and which when recorded, are notice to all the world are of sufficient dignity to justify the Sheriff in refusing to treat them as nullities in the absence of sufficient circumstances to indicate to him their simulation. He may at his own peril make a seizure of property in the possession of the debtor in the execution, disregarding the paper title of a third party, but he is not bound to take upon himself the responsibility of deciding whether an adverse title set up by a third person in a form recognized by law as valid, be real or ficticious. If the Sheriff under such circumstance, is not willing to assume the responsibility of making a seizure, the plaintiff must have recourse to his action against the adverse claimant, to have the title opposed to him annulled. In the present case, the Sheriff had very strong reasons to decline such a responsibility. A previous execution had been taken out on this same judgment, and two of the negroes embraced in the sale from *David* to *Jesse Stansburgh* had been seized under it. *Jesse Stansburgh* enjoined the execution, and after a trial on the merits, his injunction was sustained. This was a matter of record, and if the Sheriff had made the seizure in face of *Jesse Stansburgh's* recorded titles, and of this successful vindication of them, he could scarcely have been viewed in any other light than that of a trespasser.

We do not consider the fact of his having taken a bond from *Jesse Stansburgh* to indemnify him for not making the seizure as in any manner affecting the legal relations or rights of the parties.

The cotton which was pointed out for seizure, was raised on a plantation called Oakdale, of which it is shown by the evidence *Jesse Stansburgh* had the management and control, and on which these negroes were employed. It is not shown that *David Stansburgh* had any title to the land or to any negroes on the plantation, and the plaintiff has therefore failed to establish that the cotton raised on the place and which was claimed by *Jesse Stansburgh,* was liable to seizure for the debts of *David Stansburgh.*

The case recently decided of *Dunlap* v. *Freret,* has been invoked as an authority in favor of the plaintiff. The case has no bearing on the questions involved in this suit. In that case the Sheriff had made an actual seizure, and afterwards released it; by doing so, he took upon himself the burden of proving that the property did not belong to the debtor.

The plaintiff in this case, has failed to show any other title than that of possession to any of the property pointed out to the Sheriff for seizure, and it is not therefore necessary to consider the question which was raised in argument as to the identity of some of the negroes with those mentioned of the same name in the titles of *Jesse Stansburgh.*

We are of opinion there is no error in the judgment appealed from, and it is therefore affirmed with costs.